ORIGINAL

FILED
MAR 28 2008
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Bid Protest**

**Capitol Supply Inc.**
**1000 Sawgrass Corporate Parkway**
**Suite 452**
**Sunrise, FL 33323-2871**

**v.**

**THE UNITED STATES**

**No. 08-221 C**

**COMPLAINT**

Plaintiff Capitol Supply Inc. ("Capitol"), a small business, by and through its undersigned Attorney of Record, upon personal knowledge as to itself, its own acts, and the contents of the documents referred to herein, and upon information and belief as to all other matters, hereby sues Defendant, The United States of America, and for its Complaint alleges as follows:

NATURE OF THE ACTION

1. This action protests the refusal of the General Services Administration ("GSA") to evaluate Capitol's quotation and the subsequent exclusion of Capitol's quotation from consideration for an award of a Blanket Purchase Agreement ("BPA") resulting from the GSA Federal Strategic Sourcing Initiative ("FSSI") Request for Quotation #189760 (the "RFQ"). Capitol seeks a permanent injunction and declaratory judgment requiring GSA to evaluate Capitol's quotation in accordance with the RFQ and award a BPA to Capitol.

## JURISDICTION

2. This Court has jurisdiction over the subject matter of this Complaint pursuant to the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub. L. No. 104-320, §§ 12(a), (b), 110 Stat. 3870 (Jan. 3, 1996), codified at 28 U.S.C. §1491(b)(1).

## THE PARTIES

3. Plaintiff, Capitol Supply Inc., is a corporation organized and doing business under the laws of the State of Florida, having an office and a principal place of business in Sunrise, Florida. Capitol is a small business under the Small Business Administration's size standards for small businesses.

4. Defendant, the United States of America, for all purposes relevant hereto acted by and through the General Services Administration ("GSA"), an agency of the federal government.

## FACTUAL BACKGROUND

5. The GSA, Federal Acquisition Service ("FAS"), Services Acquisition Center, issued the RFQ on February 6, 2007 as a part of the GSA's Federal Strategic Sourcing Initiative (FSSI) to establish multiple non-mandatory BPA's to procure office supplies from qualified suppliers holding GSA Schedule 75 contracts for Special Item Number ("SIN") 75 200 - Office Products.

6. Capitol currently holds Federal Supply Schedule 75 Contract # GS-02F-0100N.

7. The RFQ did not limit the number of items that an offeror could include in its offer, nor did the RFQ require the offeror to quote a minimum number of items.

8. The RFQ required the offeror to insert in the "RFQ Quote Sheet" the items offered, identified by subcategory, manufacturer, a "stripped manufacturers part number," the item price from existing schedule contract and the proposed price.

9. The "stripped manufacturers part number" is defined in the RFQ Quote Sheet as "the manufacturer part number without any non-alphanumeric and without any spaces." The number GSA actually needed for their spreadsheet to work was the manufacturer's part number preceded by a three letter manufacturer identification code. A distributor's part number typically includes a three letter manufacturer abbreviation which identifies the source from whom the distributor gets their product. The only "part numbers" provided by GSA were those listed in the "SPR catalog" tab of the RFQ Quote Sheet, and were mislabeled as "stripped manufacturers part number" when in actuality they were the distributor's part number, i.e., the SP Richards part number, which included SP Richard's unique manufacturer code. At the time of the solicitation, the three letter codes used by distributors such as SP Richards to identify manufacturers were not uniform, varying from distributor to distributor.

9. According to the RFQ, the use of the SP Richards list price was for the sole purpose of establishing a consistent reference point for pricing analysis and comparison across all qualified suppliers during the evaluation process. S.P. Richards was randomly selected by GSA to provide a common reference point from which pricing quotes could be evaluated.

9. Capitol acquires office supply products from S.P. Richards as well as other distributors for the products it offers under its GSA Schedule contract.

9. The RFQ Quote Sheet is an Excel spreadsheet formatted by GSA. The RFQ Quote Sheet is comprised of several tabs or pages which contain either reference information or formatted cells for the offeror to enter information that relate to the products it is offering. The reference tabs includes a page of instructions, definitions of the subcategories, and the SP Richards full catalog.

11. The RFQ Quote Sheet provides two columns in the spreadsheet, columns 6 and 7, for pricing information for items not in the SPR catalog.

12. The offeror was required to fill out contact information, information on the items offered and proposed volume pricing. On the page where the item pricing information is to be inserted, there is a formatted area for only 15,000 items. The RFQ Quote Sheet spreadsheet file provided with the RFQ on the e-Buy website was locked at 15,000 line items and, as a result, would not populate data fields for the 15,001st line item or any additional line item. Nothing in the solicitation states how an offeror should list items if it intends to offer more than 15,000 items. Nothing in the solicitation restricted offerors from offering more than 15,000 items.

13. The RFQ evaluation criteria states that award will be made to contractors whose quotes represent the best value to the Government. The RFQ's evaluation methodology also provided that the technical proposal was weighted more heavily than price. The four technical sub-factors, listed in order of importance, were: Socioeconomic Status, Capability and Capacity, Technical and Management Approach, and Past Performance.

14. The only description in the RFQ of a methodology for evaluation of prices, other than instructions to the offerors, is a statement to the effect that the price factor will be evaluated based on the "Subcategory" pricing, tiered volume discounts, and "Full Catalog" pricing.

15. The RFQ states that GSA had not established either a minimum or maximum number of BPA's to be awarded.

16. On March 2, 2007, Capitol submitted a fully compliant and timely quotation in response to the RFQ. GSA received a total of 42 timely quotes in response to the RFQ including that of Capitol.

17. In compliance with the RFQ, Capitol submitted three electronic versions of one original quote, five copies of the quote and one copy of Capitol's commercial full catalog.

18. Capitol's quotation contained 55,976 line items.

19. Because of the limitations of the spreadsheet file provided by GSA, the RFQ's Office Supplies Quote Sheet did not automatically populate all cells for line items 15,001 through 55,976 offered by Capitol. GSA has admitted that other offers had the same issue.

20. The GSA and Capitol discussed the RFQ's Office Supplies Quote Sheet's limitation on May 14, 2007. As a result of these discussions, the GSA directed Capitol to break its pricing quote into multiple spreadsheets using copies of the RFQ Quote Sheet. The RFQ was not amended to include these additional instructions provided to Capitol and other offerors.

21. As requested by GSA, Capitol completed the RFQ's Office Supplies Pricing Spreadsheet four times as a workaround which would result in the automatic population of the spreadsheet for all 55,976 line items proposed by Capitol.

22. In response to the GSA's direction, Capitol submitted its revised proposal on May 22, 2007. The revised proposal consisted in part of four copies of the RFQ Quote Sheet with the first 15,000 line items filled out four times to accommodate the 55,976 line items being proposed by Capitol.

23. On August 3, 2007, the GSA notified Capitol that it had not been selected for an award of a BPA. The GSA's notice to Capitol only advised Capitol that "the responses to the request were very competitive and highly responsive".., and that "[t]he basis for the award decision was an integrated assessment of the evaluation factors set forth in the RFQ in accordance with FAR 8.405-2(d)." The GSA's notice did not advise Capitol why its quotation had not been successful.

24. On August 7, 2007, counsel for Capitol requested, on Capitol's behalf, that GSA provide an explanation of its basis for not awarding a BPA to Capitol.

25. On August 30, 2007, GSA responded to Capitol's request for an explanation. In this response, and contrary to the information contained in GSA's notice to unsuccessful offerors, GSA advised Capitol that GSA had not awarded a BPA to Capitol because:

> the pricing quote submitted [by Capitol] was not prepared in accordance with the instructions stated in the RFQ Quote Sheet, incorporated by Amendment 0002 dated March 8, 2007 and it did not comply with the requirements set forth in the RFQ, Section D.3.1 .4 Price Proposal — Volume 11.

26. In its debriefing letter of August 30, 2007, the GSA went on to advise Capitol that it was Capitol's failure to follow the pre-formatted table that resulted in the GSA

determining Capitol's quote to be unacceptable, notwithstanding the fact that Capitol had followed to the letter GSA's instructions, including verbal instructions from the Contracting Officer.

27. On September 10, 2007, Capitol submitted an agency level protest to the GSA.

28. By letter of October 5, 2007, GSA denied Capitol's agency level protest. GSA claimed that Capitol did not provide "the proper stripped manufacturers part numbers" in the Quote Sheet spreadsheet. GSA acknowledged that the first 15,969 items could be "looked up" in the SP Richards catalog, i.e., the cells in each line that were formatted to be automatically calculated were populated as GSA expected.

29. On October 15, 2007, Capitol filed a bid protest with the Government Accountability Office. The protest was acknowledged by GAO on October 18, 2007 and assigned filed number B-309999.3.

30. On November 15, 2007, GSA filed its Agency Report in response to Capitol's protest. In its Report, GSA acknowledged that "[m]ost vendors submitted quote sheets that had at least one mistake."

31. According to the Agency Report, two methodologies were used to evaluate pricing offered by each vendor: the Average Item Discount and the BPA Average Discount. GSA has stated that the Average Item Discount was reportedly derived by calculating the average of all the proposed percentage discounts within a quote and the BPA Average Discount was derived by first determining the difference between the average BPA rate and the average SPR rate - a dollar discount value - and dividing this difference by the average SPR rate to arrive at a separate percentage discount. GSA has

not provided any evidence that this explanation is anything other than a post-dispute rationalization of the agency's actions in rejecting Capitol's offer.

32. On November 26, 2007, Capitol filed it Comments on the Agency Report.

33. Except for the RFQ itself, the Agency Report did not include a copy of an Acquisition Plan or any other internal documentation prior to the rejection of Capitol's offer setting out the planned procedure for the evaluation of offers. Also, the Agency Report did not include any information regarding the evaluation of the 41 other offers received in response to the RFQ, at least one of which offered more than 30,000 items. The Agency Report did state that most offers included fewer than 15,000 items.

34. According to GSA's Agency Report, of the 42 offers submitted in response to the RFQ, Capitol's technical score tied for 9th highest with a score of 245 on a scale of 300. The Agency Report also stated that thirteen BPA's were established in response to the RFQ. GSA awarded 13 BPA's to offerors who, according to GSA, provided "the most highly rated quotes."

35. If GSA had evaluated Capitol's prices for the items quoted by Capitol, based on Capitol's technical score, GSA would have awarded a BPA to Capitol.

36. The Agency Report erroneously claimed that Capitol did not enter the "stripped part numbers" correctly because a number of the line items could not be matched to items in the SP Richards catalog. In fact, Capitol complied exactly with RFQ instructions on how to enter items and part numbers for items not in the SP Richards catalog.

37. At the request of GAO, GSA filed additional information on December 5, 2007, in response to Capitol's Comments. On December 10, 2007, Capitol responded to GSA's additional comments.

38. On January 22, 2008, GAO issued its decision denying Capitol's bid protest.

39. On March 11, 2008, Capitol learned of a new Department of the Navy Policy that required the use of the FSSI BPA's for the acquisition of office supplies. Previously, use of the FSSI BPA's was optional. This effectively made use of the FSSI BPAs mandatory.

40. According to the RFQ, which was intended to result in non-mandatory BPAs, the Department of the Navy was expected to account for $108,000,000 of a total anticipated purchased amount of $322,200,000, or one-third of all purchases under the BPA's.

COUNT I
(VIOLATION OF THE COMPETITION IN CONTRACTING ACT)

41. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 39 above, as if fully set forth herein.

42. Defendant's refusal to evaluate Plaintiff's quotation in accordance with the RFQ and award a BPA to Plaintiff violates the statutory requirement of 41 U.S.C. 253b(a) in that Defendant failed to evaluate Defendant's competitive proposal, and award a contract, based solely on the factors specified in the solicitation.

COUNT II
VIOLATIONS OF THE FEDERAL ACQUISITION REGULATION

43. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 41 above, as if fully set forth herein.

44. Defendant's actions violate the requirements of FAR §1.602-2 in that the Contracting Officer did not give Capitol's proposal impartial, fair, and equitable treatment.

45. Defendant's actions violate the requirements of FAR §§8.404(b) and 8.405-3(a) by acting arbitrarily and capriciously when evaluating Plaintiff's offer to enter into a BPA in response to the RFQ.

46. Defendant's actions violate the requirements of FAR §§8.404(c)(1) and 7.102(a) in that the required acquisition planning was not performed.

COUNT III
AGENCY ACTION IN SELECTION OF MIGRATION CANDIDATE IS ARBITRARY, CAPRICIOUS, AND AN ABUSE OF DISCRETION

47. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 45 above, as if fully set forth herein.

48. Defendant's refusal to evaluate Plaintiff's proposal and award a BPA to Plaintiff is arbitrary, capricious and an abuse of discretion.

WHEREFORE, Plaintiff requests that this Court enter judgment for Plaintiff on this Complaint for injunctive and declaratory relief; require Defendant to evaluate Plaintiff's quotation and to award a BPA to Plaintiff pursuant to the RFQ; award to Plaintiff reasonable attorney fees under the Equal Access to Justice Act; and grant such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Holly A. Roth
McDermott Will & Emery
600 Thirteenth St., N.W.
Washington, D.C. 20005-3096
Tel.: (202) 758-8000
Fax: (202) 756-8087

*Attorney for Plaintiff Capitol Supply Inc.*

Of Counsel:

Jon W. van Horne
Law Office of Jon van Horne, Esq.
1629 K ST. N. W.
Suite 300
Washington D.C., 20036
Tel.: (202) 478-2921
Fax: (202) 478-2921

Date: March 28, 2008